UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|                              |   |                          |
|------------------------------|---|--------------------------|
| FITZROY L. BROWN, et al.,    | ) |                          |
|                              | ) |                          |
|    Plaintiffs,| ) |                          |
|                              | ) |                          |
| v.                           | ) | Civil No. 16-CV-11484-LTS|
|                              | ) |                          |
| CITIMORTGAGE, INC.,          | ) |                          |
|                              | ) |                          |
|    Defendant. | ) |                          |

MEMORANDUM AND ORDER

April 11, 2017

SOROKIN, J.

For the reasons that follow, the Court ALLOWS Defendant's Motion to Strike (Doc. 55) and ALLOWS in part and DENIES in part the Motion to Dismiss (Doc. 50).

I. **BACKGROUND**

On July 18, 2016, Pro Se Plaintiffs Fitzroy L. Brown and Dawne P. Brown filed a Complaint against Defendant CitiMortgage, Inc., alleging various consumer protection claims arising out of their mortgage relationship and a looming foreclosure of Plaintiffs' home. Doc. 1 at 1-2.

This was not the first lawsuit filed by Plaintiffs against this defendant. Plaintiffs first filed a suit in January 2012, amended their claims at least several times and proceeded to a bench trial before Judge Giles in the Superior Court of the Commonwealth of Massachusetts in December 2015. Doc. 7 at 2-5. Plaintiffs lost this trial and judgment was entered against them. On July 11, 2016, Plaintiffs filed another state suit regarding the same matters and sought a

1

preliminary injunction. Doc. 15-1 at 2. Judge Giles denied Plaintiffs' request for an injunction, finding that their claims were barred by claim preclusion and that her previous findings of "bad faith and unclean hands" and lack of success on merits precluded equitable relief. Id. at 3-4.

After voluntarily dismissing this second state suit, Plaintiffs filed this federal action. Two days after filing the Complaint, Plaintiffs sought a preliminary injunction. Doc. 16. In a written ruling after a hearing, the Court denied this motion, finding that (a) the principles of claim preclusion barred most of Plaintiffs' claims; (b) Plaintiffs failed to show a likelihood of success on any claims arising out of facts that post-date the 2015 Superior Court trial; and (c) the equities did not favor plaintiffs.

On August 9, 2016, Defendant filed a Motion to Dismiss. Doc. 25. When the time for Plaintiffs to file a response expired without a filing, the Court *sua sponte* ordered Plaintiffs to respond and granted Plaintiffs twenty-one days to do so. Doc. 28 at 2. Plaintiffs responded timely, with both a Motion for Leave to Amend and an Opposition to the Motion to Dismiss. The Court allowed the Motion to Amend, denied the pending Motion to Dismiss as moot, and granted Plaintiffs an additional fourteen days to file an Amended Complaint. The Court cautioned Plaintiffs that if their Amended Complaint failed to survive the Rule 12(b)(6) scrutiny, the Court would dismiss their action with prejudice. Doc. 42 at 2.

On November 3, 2016, Plaintiffs filed a Verified Amended Complaint ("Amended Complaint"). Doc. 46. Defendants filed a renewed Motion to Dismiss on November 28, 2016. Doc. 50. To date, Plaintiffs have not filed any response to the Motion to Dismiss. On December 12, without seeking leave, they did file another "Verified First Amended Complaint" ("Second Amended Complaint"). Doc. 54. Defendant has moved to strike this Complaint. Doc. 55.

Plaintiffs have opposed this Motion, claiming that they are entitled as a matter of right to file it or, alternatively, that the Court should grant leave to amend.  Doc. 56 at 1-2.

II.     **Motion to Strike the Second Amended Complaint**

The Court declines to consider the Second Amended Complaint (Doc. 54).  At this stage of the litigation, Plaintiffs must either seek leave of court or consent from Defendant for the filing.  See U.S. ex rel. D'Agostino v. EV3, Inc., 802 F.3d 188, 192 (1st Cir. 2015) (holding that the plaintiff, after exercising the one-time right to amend a complaint within 21 days of serving it, could make further amendments only with the opposing party's consent or with leave of court); Fed. R. Civ. P. 15(a)(1).  They have done neither.  Moreover, Plaintiffs' Opposition to the Motion to Strike cannot serve as an explanation of the reason to permit the filing.  Even if the Court were to consider their Opposition as a motion for leave, Plaintiffs have not successfully explained in that document how their Second Amended Complaint cures the defects previously identified by Defendant.  Thus, the Motion to Strike (Doc. 55) is ALLOWED.

III.    **Motion to Dismiss the Amended Complaint**

Insofar as the Amended Complaint (Doc. 46) asserts claims arising out of the events prior to the Superior Court trial in December, 2015, principles of claim preclusion bar all of these claims.  Under Massachusetts law, "[c]laim preclusion makes a valid, final judgment conclusive on the parties and their privies, and prevents relitigation of all matters that were or could have been adjudicated in the action."  O'Neill v. City Manager of Cambridge, 428 Mass. 257, 259 (Mass. 1998) (citing Blanchette v. Sch. Comm. of Westwood, 427 Mass. 176, 179 n. 3 (Mass. 1998)).  Here, as explained in the Court's Order on the Motion for Preliminary Injunction, the same parties litigated these same matters to conclusion in the Courts of the Commonwealth.

Accordingly, the Motion to Dismiss Counts I, II, III, IV, and VI, is ALLOWED. In light of this ruling, the Court need not reach Defendant's argument that these counts also fail to state a claim.

Three claims remain: Counts V, VII and VIII. Defendant argues that these remaining claims are meritless and moves to dismiss the Amended Complaint for failure to state a claim. Doc. 51 at 1. After careful consideration of the parties' arguments, the motion is ALLOWED IN PART and DENIED IN PART.

### A. Count V

Defendant moves to dismiss Count V, a negligent misrepresentation claim. To assert this claim under Massachusetts law, Plaintiffs must allege that Defendant: (1) in the course of business, (2) supplied false information for the guidance of others (3) in their business transactions, (4) causing and resulting in pecuniary loss to those others (5) by their justifiable reliance on the information, and that Defendant (6) failed to exercise reasonable care or competence in obtaining or communicating the information. Braunstein v. McCabe, 571 F.3d 108, 126 (1st Cir. 2009). Plaintiffs' allegations for their negligent misrepresentation claim must meet the Rule 9(b) standard of particularity. N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale, 567 F.3d 8, 15 (1st Cir. 2009) (noting that the First Circuit and other circuits have read Rule 9(b) expansively to cover associated claims, such as negligent misrepresentation, "where the core allegations effectively charge fraud").[1]

Here, Plaintiffs allege that Defendant engaged in negligent misrepresentation when it stated, in a March 2016 letter, that once their HAMP modification application was "complete with all required documents, [Defendant would] stop all foreclosure activity" until it determined

---

[1] Plaintiffs' core allegations here effectively charge fraud, because they allege that Defendant made false representations "with the intention to induce Plaintiffs" to apply for and rely on the 2016 HAMP application, even though they were aware that Plaintiffs' loan was previously discharged and that they lacked the ability to make these representations. Doc. 46 at ¶ 159-61.

4

whether or not the application was approved.  Doc. 46 at 7, 25 (relying on ¶¶ 33-37 of the Amended Complaint as support for claim of negligent misrepresentation).  Plaintiffs allege that this statement was false because Defendant did not actually intend to stop "all foreclosure activity" as stated.  See id.  Plaintiffs further allege that Defendant continued its foreclosure activity despite receiving a complete application from Plaintiffs.  See id. at 6-7, 18.  Plaintiffs allege that, as a result of their reliance on Defendant's statement and the delayed HAMP application review process, they postponed the sale of their property and "forewent opportunities and options to keep [their] home such as filing bankruptcy and seeking other loss mitigation."  See id. at 9, 25.  Plaintiffs' alleged damages include "escalating fees and charges, damages to our credit, accumulation of interest, loss of time, lack of access to funds and credit, needless financial problems, and loss of [their] home."  Id. at 9.

      The Court finds that Plaintiffs sufficiently state a claim for negligent misrepresentation.  Defendant argues that there was no false information supplied and that Plaintiffs could not have justifiably relied on Defendant's statement because the March 2016 letter and HAMP modification application concerned Plaintiffs' *second mortgage*, whereas the foreclosure of their property was based on their *first mortgage*.  Doc. 51 at 16-17.  However, Defendant never specified in the March 2016 letter that it would stop the foreclosure activity *arising from Plaintiffs' second mortgage*; it simply stated that it would stop "all foreclosure activity," without qualification.  Doc. 46 at 7.  Moreover, here, Defendant was the servicer of both the first and second mortgages.  Id. at 3-4.  Under these circumstances, Plaintiffs plausibly state a claim that Defendant negligently misrepresented that it would stop all foreclosure activity that it had the authority to conduct, i.e. including the proceedings based on the first mortgage.

5

Defendant's argument that it did not make a false statement because it never told Plaintiffs that their application was "complete" also fails. See Doc. 51 at 16. Defendant's statement in the March 2016 letter did not state that it would stop all foreclosure activity once it *notified* Plaintiffs of the completion of their application; it only stated that Defendant would stop all foreclosure activity once the application "[was] complete with all required documents." Doc. 46 at ¶ 35. Here, Plaintiffs allege that they "completed and submitted the application with all required documentation," id. at 6, and that Defendant never requested any additional document after acknowledging receipt of their HAMP application, id. at 8. Accepting these allegations as true, the Court finds that Plaintiffs stated enough facts to claim that their application was complete.

Accordingly, the Court finds that Plaintiffs have at least stated enough facts to make a plausible negligent misrepresentation claim on its face. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007) (stating that the plausibility standard requires "only enough facts to state a claim to relief that is plausible on its face"). Defendant's motion is therefore DENIED as to Count V. The Court notes that the damages, if any, attributable to the alleged negligent misrepresentation are only those damages arising from the "forwent" opportunities or additional costs incurred during the time period when Plaintiffs justifiably relied on Defendant's statements.

### B.  Count VII

Count VII alleges a breach of the duty of good faith and fair dealing arising out of Defendant's alleged misconduct in three respects in the course of the foreclosure process: 1) providing Plaintiffs with an alternate copy of the First Note without endorsements, 2) exercising the power of sale without notifying the tax assessor or utility company within thirty days, and 3)

transferring title to a third party purchaser as the beneficiary of the mortgage and not on behalf of Freddie Mac. These allegations, presumed true for purposes of this motion, fail to plausibly state a claim.

Under Massachusetts law, a "mortgagee in exercising a power of sale in a mortgage must act in good faith and must use reasonable diligence to protect the interests of the mortgagor." Aragao v. Mortg. Elec. Registration Sys., Inc., 22 F. Supp. 3d 133, 141 (D. Mass. 2014) (quoting Seppala & Aho Const. Co. v. Petersen, 367 N.E.2d 613 (Mass. 1977)). However, the covenant of good faith and fair dealing cannot be "invoked to create rights and duties not otherwise provided for in the existing contractual relationship." Ayash v. Dana-Farber Cancer Inst., 822 N.E.2d 667, 684 (Mass. 2005) (quoting Uno Rests. v. Boston Kenmore Realty Corp., 805 N.E.2d 957 (Mass. 2004)). Here, Plaintiffs have not identified specific contractual provisions requiring the conduct that they allege Defendant failed to undertake. Nor have Plaintiffs identified how Defendant's actions breached the more generalized duty of good faith and fair dealing. Cf. Nickerson-Reti v. Bank of Am., N.A., No. CIV. 13-12316-FDS, 2014 WL 2945198, at *9 (D. Mass. June 26, 2014) (finding a sufficiently stated claim of breach of the duty of good faith and fair dealing when the complaint alleged that the defendant repeatedly ignored the plaintiff's contacts and document submissions).

The one alleged requirement that appears in a relevant statute—the duty to notify the tax assessor or utility company—is not a pre-foreclosure requirement that is part of the foreclosure process and does not negatively affect the mortgagor. See Turra v. Deutsche Bank Trust Co. Americas, 68 N.E.3d 631, 634 (Mass. 2017); Mass. Gen. Laws ch. 244 § 15A. As Defendant has pointed out, this requirement is concerned with providing notice to third parties and "imposes no restrictions or obligations on the mortgagee vis-a-vis the mortgagor." Kiah v. Carpenter, No. 15-

P-911, 2016 WL 1079407, at *3 (Mass. App. Ct. Mar. 18, 2016); see Turra, 68 N.E.3d at 634. Accordingly, Count VII fails to state a claim and Defendant's Motion to Dismiss Count VII is ALLOWED.

### C. Count VIII

Count VIII alleges a violation of RESPA under § 2605. To state a claim under this section, Plaintiffs must show "(1) that the servicer failed to comply with the statute's [qualified written request] rules; and (2) that the plaintiff incurred actual damages as a consequence of the servicer's failure." Foregger v. Residential Credit Sols., Inc., No. 12-11914-FDS, 2013 WL 6388665, at *4 (D. Mass. Dec. 5, 2013) (citing Okoye v. Bank of New York Mellon, No. 10-11563-DPW, 2011 WL 3269686, at *17 (D. Mass. July 28, 2011)). In order to plead actual damages sufficiently, Plaintiffs must "allege specific damages *and* identify how the purported RESPA violations caused those damages." Okoye, 2011 WL 3269686, at *17 (emphasis in original).

Here, Plaintiffs allege that they have suffered actual damages—including damages to their credit, monetary damages, mental anguish, emotional distress and the loss of their home—"[a]s a result of CMI's violations." Doc. 46 at ¶ 183. However, Plaintiffs fail to allege *how* the stated damages were actually caused by the alleged RESPA violations. Plaintiffs have not stated how any of these were distinctive damages specifically caused by Defendant's failure to properly respond to their letters. See Okoye, 2011 WL 3269686, at *17 (finding Plaintiffs' RESPA claim futile because they failed to allege that they suffered any "distinct damages *as a result of* [the defendant]'s alleged noncompliance"). Nor have Plaintiffs described how the alleged RESPA violations exacerbated these general damages associated with their default and foreclosure proceeding. Foregger, 2013 WL 6388665, at *5 (stating that to show a causal relationship

8

between the defendant's RESPA violation and damages such as emotional distress and various costs, the plaintiffs had to show that the existing damages were somehow enhanced or exacerbated by the alleged violation).

Plaintiffs also allege that they are entitled to statutory damages under 12 U.S.C. § 2605(f)(1)(B). But statutory damages under this section are available only if Plaintiffs sufficiently allege a pattern or practice of noncompliance with RESPA. See Afridi v. Residential Credit Sols., Inc., 189 F. Supp. 3d 193, 200 (D. Mass. 2016); Bulmer v. MidFirst Bank, FSA, 59 F. Supp. 3d 271, 279 (D. Mass. 2014). Here, after alleging Defendant's failure to respond to their own qualified written requests ("QWR"), Plaintiffs make the following conclusory statement: "Upon information and belie[f] we allege that CMI has engaged in a much broader pattern and practice of failing to comply with RESPA by not responding to QWRs." Doc. 46 at ¶ 182. This is insufficient. See Toone v. Wells Fargo Bank, N.A., 716 F.3d 516, 523 (10th Cir. 2013) (finding the plaintiffs' allegations insufficient when they merely asserted that a pattern or practice could be inferred from the defendant's failure to respond to their own requests and failed to allege any violations with respect to other borrowers); see also Perron on behalf of Jackson v. J.P. Morgan Chase Bank, N.A., 845 F.3d 852, 858 (7th Cir. 2017) (suggesting that some evidence of coordination is needed to recover statutory damages); Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 336 (1977) (finding, in a different context, that a "pattern or practice" means a company's "standard operating procedure" rather than isolated instances).[2]

---

[2] One court has found allegations of five failures to respond to the plaintiff's QWRs to be sufficient. Ploog v. HomeSide Lending, Inc., 209 F. Supp. 2d 863, 868–69 (N.D. Ill. 2002). However, even if the Court were to follow this reasoning, Plaintiffs here fail to sufficiently allege that there were five or more relevant RESPA violations.

While Plaintiffs allege that they sent a QWR to Defendant on more than six occasions, only the two most recent ones are specified to have been sent after December, 2015: one on February 29, 2016 and another on April 4, 2016. Doc. 46 at ¶ 178. To the extent that any of the other QWRs were sent prior to the Superior Court trial in December, 2015, such QWRs are irrelevant because Plaintiffs' RESPA claims arising out of them are barred by claim preclusion. Moreover, Plaintiffs fail to state whether any of these other inquiries met the requirements triggering

Count VIII therefore fails to state a valid claim and the Motion to Dismiss Count VIII is ALLOWED.

## IV. CONCLUSION

For these reasons, Defendant's Motion to Strike (Doc. 55) is ALLOWED and the Motion to Dismiss (Doc. 50) is ALLOWED in part and DENIED in part. The Clerk shall schedule a Rule 16 hearing for establishment of a schedule governing the one claim, Count V, that remains.

SO ORDERED.

  /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge

---

Defendant's statutory duty to respond under 12 U.S.C. § 2605(e). See O'Connor v. Nantucket Bank, 992 F. Supp. 2d 24, 36 (D. Mass. 2014) (laying out three requirements that a borrower has to meet to trigger the duty to respond, such as that the information sought must concern the servicing of the loan).

Except for the two QWRs, Plaintiffs have not made any allegations regarding when the alleged QWRs were sent or what they were about. Plaintiffs therefore have not sufficiently alleged more than two RESPA violations that took place after December 2015.